**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KENNETH J. SILVA,

    Plaintiff,

    v.

JO ANNE B. BARNHART, Commissioner of Social Security Administration,

    Defendant.
_____/

No. C 05-00287 PJH

**MEMORANDUM DECISION AND ORDER THEREON**

Kenneth J. Silva ("Silva") seeks judicial review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability benefits pursuant to 42 U.S.C. § 405(g). Having considered the parties' cross-motions, the pertinent legal authorities, and having reviewed the administrative record, the court remands this case to the Commissioner for further proceedings.

**BACKGROUND**

Silva, at the age of 38, applied for Social Security disability insurance and supplemental insurance benefits on May 15, 2002, alleging physical disability based on neck and back pain, and mental disability relating to depression, memory and concentration problems. Silva's claim was denied both initially and on reconsideration. Silva filed a request for a hearing, which was held before an administrative law judge ("ALJ") on January 14, 2004 (without an attorney representing Silva) and then on March 17, 2004 (with an attorney present).

Silva left high school during tenth grade and does not have a high school diploma or a GED. Administrative Record ("A.R.") 42. At age 16, Silva started working in a pizza restaurant, became assistant manager and then moved between various restaurants where he

progressed to executive chef several years later. A.R. 43-44. Subsequently, for approximately five years, from 1987 to 1992, Silva worked at a variety of jobs, including as an assembler for electronics companies, a shipping clerk for a toy company, and an abatement worker for an asbestos removal company. A.R. 171. According to Silva, he left the asbestos job after receiving a back injury on the job. A.R. 45. Silva also had several serious motor vehicle accidents, one on a motorcycle and one in a jeep, although it is unclear from the record when these accidents occurred and what injuries resulted. A.R. 51. He returned to employment at restaurants from 1992 until 1995, when he stopped working altogether because of back pain. A.R. 171. He has not worked since 1995, except for a period in 2002 when he earned $551.38 working at an Econolodge. A.R. 134-135.

Silva alleges that he became disabled on December 15, 1995, as a result of back and neck pain and mental difficulties. A.R. 79. Silva contends that the severe pain and depression renders him disabled. He claims that the pain has become increasingly severe over time. See A.R. 20.

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits under the Social Security Act, a claimant must establish that he was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 416(i)(1)(A). The claimant bears the initial burden of proving that he suffers from a disability. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).

Regulations promulgated by the Commissioner set forth a five-step sequential analysis to be used by an ALJ in determining whether a claimant is disabled. See 20 C.F.R. § 404.1520. The inquiry is terminated at the stage where a decision can be made that the claimant is or is not disabled. See Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990). At Steps One through Four, a claimant must demonstrate a severe impairment and an inability to perform past work; the Commissioner bears the burden only if the sequential evaluation

process proceeds to Step Five.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).

At Step One, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled and the claim is denied.  If the ALJ determines that the claimant is not currently engaged in "substantial gainful activity," Step Two requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

At Step Three, the ALJ compares the claimant's impairment to a listing of impairments.  If a claimant's impairment meets or equals an impairment in the listing, a disability is presumed and benefits awarded.  See 20 C.F.R. § 404.1520(d).  The ALJ proceeds to Step Four only if the claimant's condition does not meet the listing at Step Three.  At Step Four, the ALJ considers whether the claimant has sufficient "residual functional capacity" ("RFC") to perform his past work despite the impairment and/or limitations. 20 C.F.R. § 404.1520(e).  If the claimant has sufficient RFC, benefits are denied.  If not, the burden shifts to the Commissioner at Step Five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and work experience." 20 C.F.R. § 404.1520(f).

**ALJ'S FINDINGS**

After performing the requisite sequential analysis, the ALJ determined that Silva was not disabled.  He determined that Silva's income since December 15, 1995 was insufficient to support a finding of substantial gainful activity.  A.R. 21.  Thus, the ALJ assessed Step One in Silva's favor.

With respect to Step Two, the ALJ found that Silva suffered from degenerative disc disease of the lumbar and cervical spine, a depressive disorder and an antisocial personality disorder.  The ALJ found these to be severe, medically determinable impairments that limited

1 Silva's ability to perform basic work activities.  A.R. 17.

2 At Step Three, the ALJ determined that none of Silva's impairments were either listed
3 or medically equivalent to the Listing of Impairments in the Code of Federal Regulations.  With
4 respect to Silva's physical injuries, the ALJ found that his medical records did not describe
5 "limitation of motion in the spine with motor loss and sensory or reflex loss" necessary for a
6 listing level spinal disorder.  A.R. 17-18.  The ALJ further concluded that neither Silva's
7 concentration nor social disorders were persistent or severe enough to meet the listing level
8 for affective or personality disorders.  A.R. 18.  Because none of Silva's impairments met the
9 appropriate listing levels or their medical equivalents, the ALJ proceeded to Steps Four and
10 Five to consider whether Silva had sufficient "residual functional capacity" ("RFC") to perform
11 his past work despite the impairments.

12 At Step Four, the ALJ found Silva able to perform a limited range of sedentary work,
13 sitting and standing at will, lifting 10 pounds occasionally and less than 10 pounds frequently,
14 and occasional reaching at or above shoulder level with the right upper extremity.  A.R. 18.
15 Additionally, the ALJ found that Silva's range of work could involve only minimal contact with
16 the general public and could not involve team work requiring cooperation with peers and
17 coworkers.  Id.  The ALJ noted that there was conflicting evidence in the record, which he
18 resolved against Silva, and he also found that Silva had exaggerated his symptoms.  A.R. 20.
19 Relying on the testimony of the vocational expert, Mr. Davis, the ALJ ultimately concluded that
20 Silva's RFC precluded him from performing his past work.  Id.

21 The ALJ then proceeded to the final step, determining whether Silva's RFC enabled
22 him to perform jobs existing in significant numbers in the national economy, given his medical
23 impairments, limitations, age, education and experience.  Again, the ALJ relied on the
24 vocational expert's testimony that someone with Silva's RFC could perform the jobs of
25 assembler or surveillance systems monitor.  Accordingly, the ALJ determined that the Silva
26 was not disabled at Step Five.  A.R. 21.

**DISCUSSION**

## A. STANDARD OF REVIEW

An ALJ's decision can be set aside only if "the ALJ's findings are based on legal error or are not supported by substantial evidence." Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. Id. Where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

## B. ISSUES

Silva raises the following issues:

1. the ALJ failed to properly evaluate Silva's RFC and inadequately discussed the evidence in support of his RFC findings; and
2. the ALJ failed to present the vocational expert with proper hypothetical questions at Step Five.

## C. ANALYSIS

### I. The ALJ's Evaluation of Silva's RFC

Silva contends that the ALJ's RFC findings are flawed for the following four reasons: (1) the ALJ did not explain how he arrived at his determination that Silva could sit/stand for eight hours per day, five days per week (Pl.'s Mot., p.9-11); (2) the ALJ provided insufficient reasons for discrediting the statements of Silva's lay witnesses (Pl.'s Mot., p.18-19); (3) the ALJ's reasons for discrediting Silva's testimony are not clear and convincing, nor is there sufficient affirmative evidence that Silva is malingering (Pl.'s Mot., p.13-18); and, (4) the ALJ failed to provide any discussion whatsoever of Silva's mental impairment of poor concentration (Pl.'s Mot., p.12).

#### a. The ALJ's Physical Capacity Determination

Silva asserts that the ALJ provided insufficient support for his conclusion that Silva

5

could alternate between sitting and standing for eight hours per day, five days per week. Pl.'s Mot., pp. 9-11. In reaching this conclusion, the ALJ found that the medical evidence provided little objective support for Silva's claimed impairments. A.R. 20. He largely rejected the conclusions of emergency room Doctor A. Medak, M.D., physical therapist Kelley McCormick, and chiropractor Dr. Lisa Posevoy, D.C., who all separately examined Silva in 2003 and determined that his physical impairments prevented him from doing any work. A.R. 18-19. Instead, the ALJ relied upon the 2002 report of Dr. Calvin Pon, M.D., that Silva was not limited in standing, sitting, or walking and could lift 15 pounds frequently and 25 pounds occasionally. A.R. 18.

Silva contends that the ALJ's failure to comply with Social Security Ruling ("SSR") 96-8p constitutes legal error. Pl.'s Mot., pp. 9-11. As an initial matter, while Social Security rulings may not be binding on this court, they must be adhered to by ALJs. 20 C.F.R. § 402.35(b)(1); Nielson v. Sullivan, 992 F.2d 1118, 1121-22 (10th Cir.1993); Prince v. Sullivan, 933 F.2d 598, 602-03 (7th Cir.1991). Furthermore, the Ninth Circuit has frequently used these rulings for guidance in cases concerning denial of social security benefits. See Celaya v. Halter, 332 F.3d 1177, 1182 fn.2 (9th Cir. 2003) (describing SSR 96-8p in conjunction with several statutes as "models of regulatory clarity"); see also Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (relying in part on SSR 96-8p); Reed v. Massanari, 270 F.3d 838, 843 (9th Cir. 2001) (same).

SSR 96-8p provides a detailed description of the ALJ's duties when assessing a claimant's RFC. It requires the ALJ to discuss the evidence that supports each conclusion, to discuss the maximum work that claimant can perform based on the record, and to explain how he resolved inconsistencies in the record. The ruling provides in pertinent part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) [], and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the

case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, available at 1996 WL 374184 at *7.

Silva claims that the ALJ did not meet this standard in determining his RFC. He claims that the evidence in the record demonstrates conflicting opinions between the various medical and non-medical sources, and that the ALJ's discussion neither explains the conclusions nor adequately resolves the inconsistencies. Pl.'s Mot., pp.9-11. The government does not directly address Silva's argument that the ALJ failed to meet the narrative requirements of SSR 96-8p. Instead, the government argues that Silva did not meet his burden of demonstrating substantial evidence of his impairments, and that the ALJ properly weighed all of the conflicting sources. Def's Mot., pp. 4-6.

The government's argument, however, mistakenly ignores the ALJ's duty to consider all of a claimant's relevant evidence and explain how conflicts in the record have been resolved. As the Ninth Circuit has stated:

> The ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . [I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. He must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."

Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003). Here, the ALJ has fallen short of that standard. As noted, the ALJ's physical RFC determination was that Silva could stand and sit at will, lifting ten pounds occasionally and less than ten pounds frequently. A.R. 18. There are two issues, related to this conclusion, that require examination. First, the ALJ stated that his conclusion regarding Silva's lifting limits (ten pounds occasionally and less than ten pounds frequently), was "based on the record as a whole." A.R. 19. However, a review of the record reveals no source - medical or non-medical - that supports the ten-pound weightlifting limitation. While this Court should not reweigh evidence *de novo*, it must review whether the ALJ's conclusions are rationally based on the evidence. Magallanes, 881 F.2d at 750.

Dr. Calvin Pon, M.D., a consultative examiner, opined that Silva was not limited in

7

standing, sitting, or walking and could lift 15 pounds frequently and 25 pounds occasionally. A.R. 209.  By contrast, Dr. A. Medak, M.D., an emergency room doctor, Kelley McCormick, a physical therapist, and Dr. Lisa Polevoy, D.C., a chiropractor, did not attach numerical values to Silva's limitations, but strongly suggested that Silva was unable to engage in any substantial lifting.  A.R. 273, 274, 276.  Dr. Medak's report noted that Silva's "chronic pain" was severe enough that Silva had "limitations in walking [and] sitting," and that he was "unable to prepare food for himself."  A.R. 273.  Ms. McCormick observed that Silva could not tolerate walking more than one street block and that his "sitting/standing tolerance in clinic" was limited to ten minutes or less.  A.R. 274.  She also indicated that Silva was unable to stand erect without experiencing back pain and that his "trunk/spine range of motion in all directions is extremely limited."  Id.  Finally, Dr. Polevoy noted that Silva could not stand up for more than five minutes without severe pain.  A.R. 275.

Neither Dr. Pon's lifting opinion, nor the three other opinions that conflict with it, support the ALJ's RFC conclusions.  Moreover, the ALJ's statement that the conclusion was "based on the record as a whole," A.R. 19,  is legally insufficient.  See 20 C.F.R. § 404.953 (ALJ's "decision must be based on evidence offered at the hearing or otherwise included in the record.").

Second, and closely related, is the ALJ's handling of conflicting sources to arrive at the determination that Silva could sit and stand at will.  A.R. 20.  As noted above, Dr. Pon's account - upon which the ALJ largely relied - differed greatly from the reports of Dr. Medak, Ms. McCormick and Dr. Polevoy.  The ALJ rejected the latter three medical and non-medical sources without satisfactory discussion.[1]  In fact, he did not provide any explanation whatsoever as to why he was discrediting Ms. McCormick's findings.  With respect to Dr. Medak and Dr. Polevoy, the ALJ simply "note[d]" that their opinions were "inconsistent with

---

[1] Dr. Polevoy, a chiropractor, and Ms. McCormick, a physical therapist, are not considered "medical sources."  20 C.F.R § 404.1513(a). However, the pertinent regulation requires that their reports and opinions nevertheless be "carefully considered" because evidence beyond medical sources is often an "important indicator" of the intensity and persistence of pain and the severity of the impairment. 20 C.F.R. § 404.1529(c)(3).

8

that of consultative examiner Dr. Pon" before concluding that "[i]t appears that these providers are advocating for the claimant in his attempt to obtain disability rather than merely providing treatment." A.R. 19. He criticized Dr. Polevoy for her "legal conclusion" that Silva was "totally disabled," but - without explanation - dismissed all of the findings that supported her conclusion. A.R. 19, 276-277. He also rejected Dr. Medak's disability determination as based on "a three-month period only" but ignored the evidence of Dr. Polevoy, and Silva's lay witnesses, that supported a much longer, more permanent period of disability. A.R. 19.

Because the ALJ failed to explain his reasoning, the court is unable to determine whether there is sufficient, substantial evidence in the record to support the ALJ's conclusions. That is the purpose underlying SSR 96-8p - to ensure that the ALJ develops and explains his findings with sufficient specificity that a reviewing court can determine whether a basis exists for those findings. For these reasons, the court remands this case to permit the ALJ to explain how he resolved the conflicts between the various medical and non-medical sources. In particular, the ALJ should explain *why* the reports of Dr. Medak, Ms. McCormick and Dr. Polevoy were disregarded and *specifically how* he came to determine Silva's physical RFC, including his findings regarding Silva's lifting limits. See Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

### b. The Evidence from the Lay Witnesses

Silva also asserts that the four statements of his family members were improperly disregarded by the ALJ. Pl.'s Mot., pp.18-19. Non-medical evidence submitted to demonstrate the severity of the claimant's symptoms must be considered "carefully." 20 C.F.R. § 404.1529(c)(3). An ALJ must take lay testimony into account, unless the ALJ expressly determines to disregard the testimony and gives germane reasons for doing so. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).

Here the ALJ acknowledged that four of Silva's relatives testified regarding the pain and difficulties that Silva encountered. A.R. 17. However, the ALJ made no further reference

9

1  to the lay witnesses' testimony and failed to specify the weight that he ascribed to it, or
2  whether he was disregarding the testimony in its entirety.
3        The testimony, if considered by the ALJ, may have been helpful in evaluating the
4  conflicting medical reports.  Alternatively, the ALJ may have discredited the lay testimony as
5  unreliable, provided that his explanation for doing so was reasonable and germane.  Lewis,
6  236 F.3d at 511.  However, the ALJ could not simply disregard the evidence of the lay
7  witnesses altogether.  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) ("Lay
8  testimony as to a claimant's symptoms is competent evidence . . . unless [the ALJ] expressly
9  determines to disregard such testimony.").  Again, on remand, the ALJ should provide a
10 reasoned discussion explaining what weight, if any, he gives to the testimony of each lay
11 witness and his reasons for disregarding any such testimony.

      **c.**      **The ALJ's Mental Capacity Determination**

13       Silva also asserts that the ALJ failed to fully consider his mental limitations during the
14 RFC analysis.  Specifically, Silva contends that while the ALJ discussed his claim of
15 depression, the ALJ did not perform a Step Four analysis of his reported concentration
16 problems.  Pl.'s Mot., p.12.  Silva argues that the ALJ failed to mention the alleged
17 concentration impairment and in doing so, the ALJ did not assess his RFC "function by
18 function."  See SSR 96-8p.  The government responds that Silva produced no objective
19 evidence of mental disability and that the doctors who assessed his mental condition found no
20 concentration problems and believed he could work full-time.  Def's Mot., p.6.
21       It is not clear from this court's review of the record that the ALJ overlooked Silva's
22 alleged concentration impairment.  In fact, while discussing the findings of Dr. Mark Pierce,
23 Ph.D., a consultative examiner who performed a psychological examination of Silva, the ALJ
24 acknowledged Pierce's assessment that Silva "had mild limitations in organizing his
25 thoughts."  A.R. 19.  Also, there was little, if any, independent evidence in the record to support
26 Silva's claimed concentration impairment.  Dr. Pierce's report noted that Silva's
27 "concentration and attention-span" were "fair" or "adequate."  A.R. 237.  None of the other
28

medical or non-medical sources, including Silva's family members, made any reference to concentration problems. See A.R. 179, 183, 189, 191.

The ALJ may disregard unsupported, self-serving statements. Flaten v. Sec'y. of Health & Human Svcs., 44 F.3d 1453, 1464 (9th Cir. 1995). Therefore, the ALJ did not err in his treatment of Silva's concentration impairment. However, even if this court were to find that the ALJ had erred in this respect, any such error was harmless because there was no evidence in the record to support Silva's claims regarding his concentration impairment.

### d. The ALJ's Discrediting of Silva's Testimony

Silva contends that the ALJ improperly rejected his own testimony regarding the severity of his symptoms, because the ALJ's reasons for discrediting the testimony were not "clear and convincing." Pl.'s Mot., p.13.

The Ninth Circuit has held that "unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing'." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Thus, the threshold question is whether the ALJ found affirmative evidence of Silva's malingering. If the ALJ utilized evidence of malingering contained in the record to reject Silva's testimony, then the rationale for rejecting it need not meet the clear and convincing standard. Id.

Malingering is "the feigning of illness or willful exaggeration of the severity of disease or injury, usually to obtain financial compensation or dispensation from obligations." J.E. Schmidt, M.D., Attorney's Dictionary of Medicine (1996). In this case, the ALJ found evidence of Silva's malingering based on the report by Dr. Pierce. As the ALJ described, Dr. Pierce observed that Silva "exaggerated his complaints and . . . there may have been motivational factors undermining his performance" in the psychological testing. A.R. 19. And later, while discussing Silva's RFC, the ALJ concluded "the credibility of the claimant's allegations of an inability to perform all work due to pain and other symptoms is undermined . . . by the evidence of exaggeration of his symptoms noted by Dr. Pierce." These findings constitute substantial evidence that Silva was malingering. Reddick, 157 F.3d at 722. Therefore, the

1 ALJ did not need to meet the clear and convincing standard when rejecting Silva's testimony
2 and consequently did not err.

### II.     The ALJ's Hypothetical Questions to the Vocational Expert

Finally, Silva asserts that the ALJ's Step Five hypotheticals to the Vocational Expert ("VE") were inadequate because they did not include questions regarding Silva's alleged concentration impairment and his need to lie down during the day. Pl.'s Mot, p.20. The government responds that the hypotheticals reflected the limitations the ALJ found in the record. Def.'s Mot, p. 9.

Hypothetical questions posed to a VE must set out all of the limitations and restrictions of the claimant. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). The VE's opinion has no evidentiary value where the assumptions in the hypothetical are not supported by record. Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). Therefore, this issue turns on whether the questions posed to the VE covered a set of assumptions that fit Silva's RFC. Because, as noted above, on remand the ALJ must further develop his RFC analysis, it is not currently possible to evaluate whether the hypothetical questions posed to the VE by the ALJ or Silva's counsel appropriately described Silva's limitations and restrictions. The ALJ will need to determine whether the hypothetical questions posed to the VE must be reformulated as a result of the RFC findings on remand. Accordingly, summary judgment may not be granted for either party at this time on this issue.

### **CONCLUSION**

For the foregoing reasons, Silva's motion for summary judgment is GRANTED in part and DENIED in part. Because this court affirms in part the ALJ's decision on issues raised by Silva in his motion, the Commissioner's cross-motion for summary judgment is GRANTED in part and DENIED in part.

The court concludes that Silva's motion should be granted in part, and the case remanded based on the ALJ's following errors: (1) the failure at Step Four to articulate sufficient reasons in arriving at Silva's RFC determination, including the failure to articulate

sufficient reasons for discrediting or disregarding the opinions of certain treating sources; and, (2) the failure to articulate any reasons for rejecting each lay witnesses' testimony. See 42 U.S.C. § 405(g), at Sentence Four.  The ALJ shall reconvene the administrative hearing if necessary to enable the ALJ to sufficiently articulate the reasons for the RFC determination, or if new hypothetical questions must be posed based on a new RFC determination.

The court, however, denies Silva's motion in part, and concludes that the ALJ did not err: (1) in analyzing Silva's alleged mental impairments in the RFC determination; and, (2) in discrediting Silva's testimony.  Accordingly, the ALJ need not re-examine these issues on remand.

This order fully adjudicates the motions listed at Nos. 11 and 12 of the clerk's docket for this case, closes the case, and terminates all pending motions.

**IT IS SO ORDERED.**

Dated: October 4, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge